**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 04-133-P-H** |
| | ) | |
| **JOHN FRECHETTE,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

**ORDER ON DEFENDANT'S MOTION
TO DISMISS INDICTMENT**

John Frechette is charged with the federal offense of possessing a firearm after having previously been convicted in Maine state court of a 1996 misdemeanor crime of domestic violence. Frechette moved to dismiss the federal indictment (or, in the alternative, to suppress all evidence of his state conviction) on the basis that in state court he was denied his right to court-appointed counsel and not adequately advised of his right to jury trial.[1] Frechette sought an evidentiary hearing in this court to present testimony concerning his limited education and his hourly wage at the time of the 1996 state conviction. The Magistrate Judge denied the request for an evidentiary hearing and Frechette has appealed that ruling. But Frechette also maintains that, according to the federal statute under which he is being prosecuted, a

---

[1] Initially, Frechette also challenged the fairness and accuracy of the state court transcript. But he later withdrew that challenge (explicitly at oral argument on June 1, 2005), agreeing that the transcript attached to the government's opposition to his motion is a fair and accurate rendition of what occurred in state court.

federal jury must determine any factual issues concerning his preservation or waiver of his right to jury trial and/or counsel.

I conclude that the state court transcript furnishes an adequate record and that no evidentiary hearing is required; that the transcript establishes that Frechette knowingly and intelligently waived his right to counsel, but also establishes that Frechette did not knowingly and intelligently waive his right to jury trial; and that the plain language of the federal statute requires me to dismiss the superseding indictment.

## ANALYSIS

According to the federal statute, a person is not considered to have been convicted of a state misdemeanor crime of domestic violence

> unless—
> (I)   the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and
> (II)   in the case of a prosecution for an offense . . . for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either
> (aa)   the case was tried by a jury, or
> (bb)   the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

18 U.S.C. § 921 (a) (33)(B)(i).  In state court, Frechette pleaded nolo, *i.e.*, no contest, to what is concededly a Maine crime of domestic violence.  He had no lawyer.

### RIGHT TO COUNSEL

Frechette concedes that the transcript reveals that the state judge advised him that he had a right to counsel and court-appointed counsel.  His

challenge, instead, is that the state judge improperly determined that Frechette did not qualify financially for court-appointed counsel.

Frechette was initially arraigned on the state charge on December 13, 1995. At that time, Maine District Judge Beliveau denied Frechette's request for court-appointed counsel on the basis that Frechette's income exceeded the guidelines for court appointment. See Docket Record at 1 (Ex. to Def.'s Mot. to Dismiss Indictment) (Docket Item 13). The case was continued for sentencing; Frechette failed to appear; he was arrested; and his nolo plea occurred on October 16, 1996.[2] At that time, the transcript reveals, the judge told the assembled defendants:

> The third right and the last right that I want to explain to everybody is your right to an attorney. If any of you are here and there is a probability or a possibility that you could be facing jail if you are convicted of the crime that you are being charged with here, I would advise you to get a lawyer or get legal advice. Also, if you can't afford a lawyer, depending on your financial circumstances, you can ask me to appoint a lawyer at the State expense for you. Here's how that happens. You let me know. I'm obviously going to let you know how serious the offense is and you are going to be asked about whether you are going to represent yourself, hire a lawyer, or ask for a court appointed lawyer. If you ask for a court appointed lawyer, you're gonna be screened this morning by a financial screening officer who will interview you and decide whether you meet the guidelines for a court appointed lawyer. If you meet the guidelines, a lawyer will be appointed who practices within our jurisdiction here. It's a private attorney. If you don't qualify, that means you will have to hire your own lawyer or represent yourself. Please understand the case doesn't go away because you don't get a court appointed lawyer. You still have to face the charges. . .

Tr. at 1 (Ex. to Gov't Objection to Def.'s Mot. to Dismiss) (Docket Item 15).

---

[2] The docket indicates that on December 13, 1995, the defendant was found "GUILTY as charged." The parties agree that this docket entry is incorrect.

Later, the state judge addressed Frechette personally:

| | |
|---|---|
| Court: | . . . All right, Mr. Frechette, . . . you have already pled Not Guilty. This was a bench warrant for not showing up to your trial and you have a right to either ask for a new court date if you want to do so. |
| Frechette: | No. |
| Court: | Do you want to change your plea? |
| Frechette: | No contest. |
| Court: | Do you want to change your plea to No Contest? Do you understand by doing that you waive your right to trial. Right? |
| Frechette: | Yes. |
| Court: | Your right to the advice of a lawyer? Does he get a court appointed lawyer? No, he didn't qualify. Okay. Do you understand that by pleading No Contest that you waive your right to trial and the advice of a lawyer? All right? |
| Frechette: | Yup. |
| Court: | Okay. Do you want to have him waived, please? |
| Court Officer: | This is a waiver of counsel I'm going to read to you. |

> I am the person charged in this proceeding. I am fully aware of my right to have my attorney of my own choosing or, if I am unable to afford an attorney, to have an attorney appointed by the court at public expense. I do not desire an attorney and hereby waive my right to be represented by an attorney.
>
> Do you understand what I read to you, sir? Having read that to you, you can sign right here, please.

Although the signed waiver no longer exists, Frechette does not contend that he did not sign it.

Thus, the transcript makes clear that Frechette was fully advised of his right to court-appointed counsel. Frechette never challenged in state court the

4

determination that he failed to qualify financially in either 1995 or 1996. However, he asks me to take evidence now of his education and income in those years. Presumably he would have me determine that either the state guidelines were improperly applied in 1995-96 or that they were inadequate to meet federal constitutional standards for court appointment of counsel.

The First Circuit has established that once the government shows the existence of an underlying qualifying conviction (it has done so here), the burden of proof shifts to the defendant to show that § 921(a)(33)(B)(i)(I) creates an exception that disqualifies the conviction. United States v. Hartsock, 347 F.3d 1, 3 (1st Cir. 2003).[3] In the context of the right to court-appointed counsel, that means that Frechette has the burden to show that the state judge improperly found him able to afford a lawyer in October 1996 when he pled nolo. But Frechette never told the state judge that the determination in 1995 was incorrect or that his circumstances had changed in October 1996. Frechette was present for the judge's speech to the assembled defendants,[4] then participated in an individualized colloquy with the judge. Yet he failed to challenge the earlier determination that he did not qualify for court appointment, and pressed forward in his nolo plea. By doing so, Frechette knowingly and willingly waived his right to counsel.[5] I am skeptical that, in enacting this federal statute, Congress intended a federal court to revisit an

---

[3] Accord Iowa v. Tovar, 541 U.S. 77, 92 (2004) (stating, in the federal constitutional context, that "in a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel").

[4] There is no indication that Frechette was not present, and although he correctly notes that the transcript does not affirmatively demonstrate his presence, he has not made any proffer that he was not there.

[5] Put another way, what was the state judge to do? Frechette gave the court no idea that he disagreed with the determination that he could afford a lawyer.

5

indigency determination ten years after the fact, and recreate incomes and expenditures, assets and liabilities, and measure them against the costs of legal representation ten years earlier for quintessentially state court proceedings.  But even if that is the consequence of the legislation, given Hartsock's assignment of the burden of proof, Frechette's proffer is inadequate to meet the exception or even require an evidentiary hearing.  See Hartsock, 347 F.3d at 8-9 (holding that the defendant bears the burden of production and persuasion on this affirmative defense).  Frechette proffers only his schooling and his hourly wage.  An hourly wage alone provides no information about other assets that might have been available to Frechette in 1996, and I have no information about the 1996 cost of legal services in Lewiston, Maine for resisting the fairly simple state charge to which Frechette pleaded nolo.  I conclude that even with his limited education (failure to complete high school), Frechette has failed to meet his burden of proof that his waiver was not knowing and intelligent or to support his request for an evidentiary hearing in the face of the clear record from the transcript.[6]

Although the First Circuit has left open the question whether this is a jury issue, it also recognized that every other Circuit has found it to be a question for the judge.  Hartsock, 347 F.3d at 4 & n.3.  I follow the unanimous rule, and conclude that there is no jury issue, and that as a matter of law, Frechette knowingly and intelligently waived his right to counsel.

---

[6] In Hartsock, the First Circuit remanded for an evidentiary hearing because there was no transcript.  Here, there is a transcript.  I recognize that after Hartsock, Magistrate Judge Kravchuk has conducted evidentiary hearings in other cases where there appear to have been transcripts.  The opinions do not reveal why she found it necessary to convene a hearing in those cases and I do not find them to be authority for holding an evidentiary hearing here.

6

Frechette also argues that wholly apart from the federal statute, his state conviction violated his Sixth Amendment constitutional right to counsel, a right that he is free to assert in this later attack. See Custis v. United States, 511 U.S. 485 (1994). But according to Hartsock, when Congress made domestic violence misdemeanants prohibited persons in 1996, "no constitutionally recognized right to counsel then existed for misdemeanor convictions that did not actually lead to imprisonment." Hartsock, 347 F.3d at 5. Frechette's 1996 misdemeanor conviction did not lead to imprisonment. Instead, he received a 30-day suspended sentence and one year's probation.[7] According to Hartsock, therefore, Frechette had no Sixth Amendment right to court-appointed counsel at his nolo plea in 1996, regardless of his financial condition. And even if he did have such a right, I conclude for the reasons stated above that he knowingly and intelligently waived the right.

### RIGHT TO TRIAL BY JURY

Because Frechette pleaded nolo in state court, he had no jury trial. It is undisputed that he "was entitled to a jury trial in the jurisdiction in which the case was tried," namely in Maine state court.[8] See 18 U.S.C.

---

[7] A few months later Frechette violated probation, and then was sentenced to 13 days intermittent confinement in the county jail, with a complete termination of probation. Exh. to Mot. Dismiss.

[8] In 1995 and 1996, both Maine and federal constitutional law conferred a jury trial right on Frechette for his misdemeanor domestic violence crime. The Maine Constitution provided: "In all criminal prosecutions, the accused shall have a right . . . To have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity." Me. Const. art. 1, § 6. A criminal defendant in Maine state court in 1995 and 1996 was entitled to a jury trial even for offenses that could be characterized as "petty." State v. Sklar, 317 A.2d 160, 170-71 (Me. 1974). Under the Fourteenth Amendment, the federal right to jury trial in state court trial by jury did not extend to "petty offenses," Duncan v. Louisiana, 391 U.S. 145, 159 (1968), but an offense carrying an authorized sentence of more than six months imprisonment was a serious offense, not a petty one. In 1995 and 1996, a Class D crime like Frechette's was punishable by a term of imprisonment of less than one year, 17-A M.R.S.A.

7

§ 921(a)(33)(B)(i)(II). The question is whether Frechette "knowingly and intelligently waived" his Maine jury trial right. See 18 U.S.C. § 921(a)(33)(B)(i)(II)(bb).[9]

I conclude that, just as the right to a jury trial is measured by the law of the jurisdiction in which the case was tried (in Frechette's case, Maine law), the knowing and intelligent waiver of the right to jury trial is also to be evaluated using the law of that jurisdiction. First, that is the common sense reading of the statute. Second, it is a logical application of the statute. If a state can determine that the jury trial right is so important that it extends to more cases than the federal constitution requires, as this federal statute allows, then that state (here, Maine) should also be able to determine the standards for waiving the state-articulated right. Third, although this is a federal prosecution, it would not be appropriate to apply a "federal" standard to the jury trial waiver as the prosecution urges here. The "federal" standard requires a written waiver, Fed. R. Crim. P. 23(a)(1), a procedure not contemplated by the Maine state procedure. Theoretically I could apply *constitutional* rules for what is a knowing and intelligent waiver, but there is no apparent reason to apply a federal constitutional standard to a right whose contours are – according to the federal statute – created and defined by state law. I conclude, therefore, that Maine's jury trial waiver standard should apply to the Maine right to jury trial.[10]

---

§ 1252 (1995), thereby implicating the federal constitutional right to trial by jury.

[9] The statute says that a knowing and intelligent waiver can be "by guilty plea or otherwise." It is uncontested that Frechette's nolo plea fits the "or otherwise" requirement if the waiver was knowing and intelligent.

[10] The parties have not argued whether Frechette waived his federal constitutional right to jury

8

In 1996, Maine law provided that the mass arraignment procedure used in Frechette's case did not adequately inform a defendant of his jury trial right. State v. Rowell, 468 A.2d 1005 (Me. 1983).[11]  In Rowell, the Maine Law Court held:

> [T]he mass instruction to an unidentified group present in the courtroom by itself is not enough to discharge the obligation [to inform the defendant of his right to a trial by jury] and to justify an inference of a voluntary and intelligent waiver [by failing to demand a jury trial within 21 days following the arraignment].  The right to a jury belongs to the individual defendant; only he, after being fully advised, can be considered to have waived it by doing nothing for 21 days.  It is incumbent upon District Court judges in conducting arraignments to take affirmative steps reasonably designed to make *each* defendant *himself* aware of his individual right to a jury trial and of the demand that he must make within 21 days if he is to avoid a binding inference of waiver.

468 A.2d at 1007-08 (emphasis in original).  Although the nature of the waiver in Rowell was waiver by inaction, rather than waiver by a plea, the Law Court made clear that it was articulating a standard for what was required to notify a defendant of the jury trial right:

> We do not mean to suggest that a mass instruction may not be used as a proper part of the process [of informing the defendant of the right to a trial by jury].  Standing alone, however, it is inadequate to establish that an individual defendant understood it, or even heard it.

Id. at 1007 n.3.

Based on the transcript available to me, which the parties agree is accurate, it is plain that Frechette was not individually advised of his right to a jury trial, as Rowell required.  Therefore, under Maine state law, his waiver of

---

trial, but I conclude that he did for the reasons stated in text at the end of this section.
[11] I rely on Rowell because it represents the state of the law in 1996, when the defendant was arraigned.  The Law Court has recently confirmed the vitality of Rowell.  See State v. Holmes, 818 A.2d 1054 (Me. 2003).

9

that right was not "voluntary and intelligent." Because Frechette did not effectively waive his Maine right to a jury trial, I conclude that he did not "knowingly and intelligently waive[] his right to a have the case tried to a jury" for the purposes of 18 U.S.C. § 921(a)(33)(B)(i)(II).

If I am wrong, and the "knowing and intelligent" standard of § 921(a)(33)(B)(i)(II) is to be governed only by federal constitutional law, I would conclude that Frechette did knowingly and intelligently waive his right to a jury trial. Under federal constitutional law, "whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend on the unique circumstances of each case." Adams v. United States, 317 U.S. 269, 278 (1942). The transcript demonstrates here that at the mass arraignment session, a group of defendants was advised of the right to "a trial by a judge or jury," and of how to exercise that right by pleading not guilty and submitting a written request within three weeks of the arraignment. Although Frechette points out that the transcript does not show affirmatively that he was present at the mass arraignment or that he heard and understood the judge's monologue, he has not made any proffer that he was not present to hear about his right to a jury trial and how to exercise it. Since the burden of proof is on Frechette under the federal standard, I conclude that he did hear the mass warning and nevertheless told the judge that he wanted to plead nolo.[12] Therefore, Frechette has not carried his burden of showing that he failed to

---

[12] Frechette's legal memoranda can be read to assert that he might have had sound defenses to the state charge. The issue here, however, is the validity of his jury trial waiver, not whether he made a good decision in pleading nolo.

10

knowingly and intelligently waive – as defined by federal constitutional standards – his right to a trial by jury.

## CONCLUSION

Because Frechette's waiver of his right to jury trial was ineffective under Maine law, he meets the exception set forth in 18 U.S.C. § 921(a)(33)(B)(i)(II)(bb).  As a result, the federal statute declares that Frechette "shall not be considered to have been convicted of [a misdemeanor crime of domestic violence]."  18 U.S.C. § 921(a)(33)(B)(i).  Therefore, Frechette's motion to dismiss the federal indictment is **GRANTED**.  His objection to the Magistrate Judge's Order denying him an evidentiary hearing is **OVERRULED**.

**SO ORDERED.**

**DATED THIS 10TH DAY OF JUNE, 2005**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

**U.S. DISTRICT COURT**
**DISTRICT OF MAINE (PORTLAND)**
**CRIMINAL DOCKET FOR CASE #: 04CR133**

| | | |
|---|---|---|
| **United States of America** | Represented By | Darcie N. McElwee<br>Office Of The U.S. Attorney<br>District Of Maine<br>P.O. Box 9718<br>Portland, ME  04104-5018<br>(207) 780-3257<br>email: darcie.mcelwee@usdoj.gov |

v.

| | | |
|---|---|---|
| **John Frechette**<br><br>　　Defendant | Represented By | John Paul DeGrinney<br>DeGrinney Law Offices<br>1266 Congress Street<br>Portland, ME  04102<br>(207) 756-8557<br>Email: jplaw@maine.rr.com |